De Lanoy, Kipp & Swan, Inc., Plaintiff, *v.* New Amsterdam Casualty Company and Hartford Accident and Indemnity Company, Defendants.

Supreme Court, Trial Term, New York County, April 5, 1939.

*Bailey & Miller* [*Theodore L. Bailey* of counsel], for the plaintiff.

*Joseph F. Murray* for the defendants.

CHURCH, J. This case was tried without a jury, the parties by stipulation on the record having waived the requirements of sections 439 and 440 of the Civil Practice Act.

The plaintiff, as the assignee of the Second National Bank of Warren, Ohio, seeks in this action to recover on a banker's blanket bond issued to the bank by the defendants. Under the terms of the bond the defendants promised and agreed to indemnify the bank " against the direct loss * * * of any money or securities * * * in which the insured has a pecuniary interest or held by the insured as collateral, or as bailee, trustee or agent, and whether or not the insured is liable therefor * * * through theft or hold-up while the property is in transit * * * such transit risk to begin immediately upon receipt of such property by the transporting employee * * * and to end immediately upon delivery thereof at destination."

Prior to October 9, 1933, the Warren Bank ordered from the Federal Reserve Bank of Cleveland, Ohio, $68,000 in currency which the Warren Bank urgently needed for payrolls the following

day. On October 9, 1933, the packing teller of the Federal Reserve Bank made up two registered mail packages, addressed to the Warren Bank, containing the $68,000 in currency. The packages were sent by registered mail and on the same date the Warren Bank was notified by the post office at Warren of their arrival. Thereupon two employees of the Warren Bank went to the post office and received the packages. On their way back these employees were held up while just in front of the bank and the two packages were taken from them in the hold-up. The hold-up men have not been apprehended and no part of the stolen money has been recovered from the robbers. The Warren Bank immediately notified the Federal Reserve Bank of the hold-up and the latter bank, realizing that the Warren Bank needed the funds for payrolls, shipped another $68,000 in currency by registered mail. The second shipment was received by the Warren Bank on October 10, 1933. The Warren Bank, on its books, prior to the hold-up and theft of the first shipment had credited the Federal Reserve Bank with $68,000. This entry was later reversed and subsequently the Federal Reserve Bank was credited with $68,000 against the second shipment. The Federal Reserve Bank debited the Warren Bank for the first shipment and debited the second shipment to a general suspense account.

There is scarcely any dispute concerning the facts which surrounded the order given by the Warren Bank to the Federal Reserve Bank for the first shipment of currency, the entries on the books of the respective banks, the shipment of the money from Cleveland, its arrival in the post office at Warren and its delivery by the postal authorities to the employees of the Warren Bank. The inference which the defendants seek to draw from these facts is unwarranted. The proof points unmistakably to the conclusion that the currency which was stolen was currency belonging to the Warren Bank and covered by the banker's blanket bond issued by the defendants insuring against the direct loss of such money.

The letter from the Second National Bank of Warren to the Federal Reserve Bank dated October 7, 1933, ordering the first shipment of currency reads: " consider this letter your authority for charging our account $68,000 in return for which please ship us like amount in currency." Following the receipt of this letter a shipping order was prepared in quadruplicate by the Federal Reserve Bank. One of the counterparts is described as a charge slip or advice which is mailed to the consignee. This charge slip reads: " As requested in your letter of 10/7/33 we have shipped them today by registered mail insured, currency as scheduled hereon prepared in 2 parcels for which we have charged your

account." This slip is marked "charge" in large type and is addressed to the Second National Bank, Warren, Ohio.

There is no dispute that the packages in question were delivered to the United States postal service and received at the United States post office at Warren, where messengers employed by the consignee bank, acting upon express instructions of their employer, received the packages for their employer from the postal authorities. Title to the money passed upon shipment. (*Seaver* v. *Lindsay Light Co.*, 233 N. Y. 273.) There is at least a general presumption which must prevail as against mere uncertainty or silence, that delivery to the carrier constituted delivery to the consignee. (*Standard Casing Co.* v. *California Casing Co.*, 233 N. Y. 413; Pers. Prop. Law, § 127, identical with Uniform Sales Act, § 46, which is in force in Ohio [Ohio Code, § 8426].)

Rule 5, stated in section 100 of the Personal Property Law (identical with Uniform Sales Act, § 19), and relied upon by the defendants, does not apply to the factual picture presented by the evidence in this case. There is no proof that the Federal Reserve Bank was required by its contract with the consignee bank to deliver the currency within the bank at Warren. Payment of the costs of transportation by the reserve bank on shipments to its member banks does not by itself establish that the property did not pass until the money arrived within the Warren Bank. The intention of the parties upon which solution of the problem depends (Pers. Prop. Law, § 99, identical with Uniform Sales Act, § 18) must be determined from all the surrounding facts and circumstances including the terms of the contract, the conduct of the parties and usages of trade.

It is true that the Federal Reserve Bank was insured under certain registered mail policies which covered shipments by the Federal Reserve Bank to other parties. These policies contained this provision: " Risks to attach from the time of leaving the office of sender and to cover all risks until actual delivery has been made to the office of addressee, whether delivery is effected in whole or in part by employees or agents of the post office department, sender or addressee."

The Federal Reserve Bank has been advanced the sum of $68,000 by the insurance companies under these policies and the defendants attempt to argue that by securing these policies the Federal Reserve Bank assumed the risk of loss. The force of this argument is destroyed when we consider that the blanket bond issued to the Warren Bank by the defendants covered losses of currency while in the possession of the bank's employees within twenty miles of the bank building.

To argue that, because the insurance companies which wrote the registered mail policies promptly advanced the sum of $68,000 to the Federal Reserve Bank, no loss was sustained by the Warren Bank, is to overlook the undisputed fact that these companies advanced that money as a loan as is evidenced by the letters from the various companies accompanying their drafts. Such advancements cannot be construed as a concession by the consignee bank or by the Federal Reserve Bank that whatever loss had been sustained due to the robbery was being thus paid. It is evident that the advancements were made as a loan immediately, to meet the needs of banking and commerce.

Payment by a stranger does not inure to the benefit of a debtor, and most certainly such payment would not operate to discharge the obligation of the debtor, without evidence showing that it was the intention of the parties to have it do so. (*King* v. *Barnes*, 109 N. Y. 267, 289.)

The doctrine stated in section 421 of the Restatement of the Law of Contracts, that " payment * * * by a third person, accepted by a creditor as full or partial satisfaction of his claim, discharges the debtor's duty in accordance with the terms on which the third person offered it," has no application to the problem presented in this case.

The defendants also advance the claim that even if the loss was that of the Warren Bank there has been a complete recovery of the loss by reason of the shipment of the second $68,000 by the Federal Reserve Bank. The defendants rely upon clause 12 of their policy which provides: " The net amount of any recovery * * * shall be applied to reimburse the insured in full of such loss and the excess, if any, shall be paid to the underwriter." The clause in question cannot be made to include the situation here disclosed. The second shipment of currency cannot be termed a recovery. The consignee bank had suffered no loss at the hands of the reserve bank and the latter is in no way charged with any responsibility for the robbery. The bank in Warren could not " recover " anything from the Federal Reserve Bank in the sense in which the word " recovery " is employed in clause 12 of the defendants' bond. Any uncertainty or ambiguity in the clause must appropriately be construed favorably to the insured.

At the trial the defendants amended their answer to set up as a separate defense section 280 of the Penal Law (as amd. by Laws of 1934, chap. 534). The assignment here was executed and acknowledged in the State of Ohio prior to the effective date of the amendment of the statute in question. Moreover the proof in this case does not reveal a violation of the section pleaded, even under the terms of the statute before amendment.

Section 11 of the bond provides: " If the insured shall hold, as indemnity against any loss covered hereunder, any valid and enforceable insurance or suretyship (other than fidelity suretyship, if any, for which credit has been given in accordance with the preceding section), the Underwriter shall be liable hereunder only for such proportion of such loss as the amount of this Bond bears to the aggregate amount of this Bond and such other insurance or suretyship."  The plaintiff seeks to recover from the defendants only their *pro rata* share of the loss.

The plaintiff, by a fair preponderance of the credible evidence, has sustained the burden of proof on its cause of action.

Judgment is accordingly awarded to the plaintiff against the defendants in the sum of $46,788.99, with interest from the date of the filing of the proof of loss with the defendants in this action, together with costs and disbursements.