### FIRST NAT. BANK OF OTTAWA v. LLOYD'S OF LONDON.

### BURNS v. FIRST NAT. BANK OF OTTAWA (FRANKLIN FIRE INS. CO. OF PHILADELPHIA et al., Third Party Defendants).

### FIRST NAT. BANK OF OTTAWA v. BURNS.

#### Nos. 7218, 7219.

Circuit Court of Appeals, Seventh Circuit.
Dec. 19, 1940.

Donald A. Gray, of New York City, and John C. Slade and Geo. W. Ott, both of Chicago, Ill., for Arthur Burns.

Walter H. Eckert, Tom Leeming, and Owen Rall, all of Chicago, Ill., for First Nat. Bank of Ottawa et al.

Before EVANS and KERNER, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

Plaintiff, First National Bank of Ottawa, sued Lloyd's of London upon a policy of insurance. Lloyd's denied liability and filed a third-party complaint seeking contribution from Franklin Fire Insurance Company of Philadelphia and five other in-

surance companies, claiming the six companies were co-insurers. The District Court, upon a trial without a jury, held against Lloyd's, denied their right to contribution from the six insurance companies, dismissed the third party complaint, assessed plaintiff's damages at $60,000 and rendered judgment against defendant Arthur Burns for $3,500 and costs. (The $3,500 being Burns' proportion of the $60,000 Lloyd's policy.) From this judgment both parties have appealed.

The policy for the sum of $100,000 relied upon by plaintiff, was issued by Lloyd's of London on April 9, 1937, and by it Lloyd's expressly agreed to pay and make good to the assured (plaintiff) all losses that the assured might sustain by reason of any money being stolen while in transit in the custody of any of the assured's servants or messengers.

October 3, 1938, while the policy was in full force and effect, plaintiff, whose place of business is at Ottawa, Illinois, requested the Federal Reserve Bank of Chicago, Illinois, to forward to it $60,000 in currency. October 4, 1938 the Federal Reserve Bank made up two packages of paper currency aggregating $60,000, enclosed them in sealed cloth bags and deposited them in the United States registered mail in Chicago, addressed to plaintiff at Ottawa, Illinois, and debited plaintiff's deposit account $60,000. October 5, 1938, the post office at Ottawa advised plaintiff by telephone that it had registered mail for the bank. At about one o'clock that afternoon an assistant cashier of the bank and another employee called at the post office and were there handed the two sealed bags, for which the assistant cashier signed a registered postal receipt; he and the employee then left the post office, each carrying one bag. About 100 feet from the post office they were held up by armed robbers who disarmed the assistant cashier and escaped with both bags. The robbers were never apprehended and no part of the contents of the bags was ever recovered. Promptly following the holdup plaintiff reported the robbery by telephone to the Federal Reserve Bank, and by mail also advised defendant of the robbery.

October 8, 1938, Marsh & McLennan, representing the third-party insurance companies (hereinafter referred to as Registered Mail Underwriters) delivered to the Federal Reserve Bank six drafts, issued by the Registered Mail Underwriters aggregating $60,000 and payable to the Federal Reserve Bank, six forms of loan receipts,[1] loss affidavits, a copy of a rider attached to each of the six policies, and forms to be completed by plaintiff. In their letter to the Federal Reserve Bank, which accompanied these documents, Marsh & McLennan stated that they were enclosing loan receipts and loss affidavits which must be executed and the forms completed by plaintiff and requested that the drafts be held until all the documents had been returned. The Federal Reserve Bank on October 10, 1938 endorsed the drafts (the drafts stated that they were in full satisfaction of all claims and demands, under the respective policies for the loss which occurred on October 5, 1938), collected the amounts thereof, and transmitted the loan receipts and loss affidavits to plaintiff, requested the documents be executed and returned to the Federal Reserve Bank, and advised plaintiff that "upon receipt of these affidavits and receipts, we shall credit your account $60,000, as the checks from the underwriters have already been delivered to us." Plaintiff answered this request thus: "We are

---

[1] The loan receipt in favor of the Franklin Fire Insurance Company and identical with the others was as follows:

"$18,000          October 7, 1938

"Received from Franklin· Fire Insurance Company (Newhouse and Sayre) Eighteen Thousand and no/100 Dollars, as a loan and repayable only to the extent of any net recovery we may make from any person or persons, corporation or corporations, on account of loss by hold-up to our property on or about October 5, 1938, or from any insurance effected by such person or persons, corporation or corporations.

"As security for such repayment, we hereby pledge to said Franklin Fire Insurance Company the said recovery and deliver to it all documents necessary to show our interest in said property, and we agree to enter and prosecute suit against such person or persons, corporation or corporations on account of said claim for said loss, with all due diligence, at the expense and under the exclusive direction and control of said Franklin Fire Insurance Company.

"The First National Bank of Ottawa,
    "Ottawa, Ill.
      "By: Fred A. Gerding
                    "President.
"Approved:
  "Federal Reserve Bank of Chicago
   "By:. O. J. Netterstrom
    "Assistant Vice President".

holding the loan receipts, which you asked us to execute, * * * until the adjuster for London-Lloyds has the opportunity of examining the wording of the receipt." October 13, 1938, Donald Gray, defendant's attorney, wrote plaintiff that defendant had no objection to plaintiff's signing the loan receipts upon receiving the $60,000. October 17 the executed documents were returned to the Federal Reserve Bank and it thereupon credited plaintiff's deposit account $60,000.

It appears that prior to the mailing of the $60,000 on October 4, 1938, the Registered Mail Underwriters had issued to the Federal Reserve Bank their respective policies of insurance, insuring the Federal Reserve Bank "for account of whom it may concern." They covered all shipments by registered mail from the time of leaving the office of the Federal Reserve Bank until delivered at the place of business of the consignee, including risks by messengers from the post office to the place of business of the consignee.

It further appears that at the time of the shipping of the $60,000 the Federal Reserve Bank declared it was shipping under these policies, the policies providing that the property of others which the Federal Reserve Bank might elect to insure were insured thereunder.

Each of the Registered Mail Underwriters' policies also provide that "with respect to losses for which this company may be liable on property insured thereunder, while in transit by messenger to or from the Post Office * * * shall attach as an excess policy covering only for the excess over any amount which may be recoverable from any other insurance * * *; but the amount of any such loss shall nevertheless be advanced promptly by this company and shall be refunded to this company * * * only as and when recovered by the insured from such other insurance."

The trial court in passing on the question of liability found that the registered mail policies only insured against messenger losses of currency in excess of any other insurance covering the particular loss; that the drafts issued and delivered to the Federal Reserve Bank by the Registered Mail Underwriters were intended as a loan covering and not as a payment of the amount lost by the plaintiff in the holdup, and concluded as a matter of law that plaintiff was the owner of the $60,000 when it was stolen and thereby suffered a loss in

that amount within the terms of the Lloyd's policy; that the Federal Reserve Bank received from the Registered Mail Underwriters the sum of $60,000 to be advanced to plaintiff as a loan upon the signing by plaintiff of loan receipts evidencing the loan; that the crediting of the plaintiff's deposit account by the Federal Reserve Bank with $60,000 upon receiving the signed loan receipts from plaintiff was a loan to plaintiff, and not a payment of the loss; that plaintiff has not been reimbursed for its loss and is entitled to recover $60,000 from the defendants; that plaintiff carried no insurance covering the loss in question other than the Lloyd's policy and that Lloyd's were not entitled to contribution from the Registered Mail Underwriters.

The policy in suit constituted primary insurance, Automobile Ins. Co. v. Springfield Dyeing Co., 3 Cir., 109 F.2d 533, 536. That employees of plaintiff have been robbed of $60,000 there can be no question. However, unless the money so stolen was covered by the policy sued on, there can be no recovery by plaintiff. The policy covered all losses that the plaintiff might sustain by reason of any money being stolen while in transit in the custody of plaintiff's messengers. The money was in the custody of plaintiff's messengers at the time it was stolen and was therefore covered by the policy.

The point is made that plaintiff has not suffered a loss which Lloyd's are obligated to indemnify, and it is claimed: (1) The risk of the loss was assumed by the Federal Reserve Bank; (2) the money lost was the property of the Federal Reserve Bank; and (3) the responsibility for the loss was accepted by the Federal Reserve Bank. The argument is that the Federal Reserve Bank insured the shipment of the currency from door to door with the Registered Mail Underwriters; that the money stood to the credit of the plaintiff and that the relationship between plaintiff and the Federal Reserve Bank was that of depositor and depository bank; that the money belonged to the Federal Reserve Bank until it was delivered at plaintiff's place of business and that the title remained in the Federal Reserve Bank; that delivery of the two bags to plaintiff's messengers was not an accepted payment of $60,000, since the messengers were merely completing the transportation of the bags and had had no opportunity to observe what the bags con-

tained; and that because the Federal Reserve Bank collected $60,000 from the Registered Mail Underwriters, it assumed the responsibility for the loss.

First: As to (1) we note from our examination of the insurance carried by the Federal Reserve Bank with the Registered Mail Underwriters that it was "excess over other insurance as to messenger losses in the hands of the consignee." The insurance carried by plaintiff with Lloyd's was $100,000 and therefore was not in excess of the $60,000 loss. Nor do we think the record discloses any obligation on the part of the Federal Reserve Bank to deliver the currency to plaintiff's place of business. It is to be noted that plaintiff was a depositor with the Federal Reserve Bank and if it desired to withdraw its money, it was bound to go and get it. In the instant case, however, the plaintiff requested the Federal Reserve Bank to send the currency by registered mail. Acting in conformity with this request did not establish an obligation on the part of the Federal Reserve Bank to deliver the money to the door of the Ottawa Bank, or place upon the Federal Reserve Bank the risk of loss in case the currency did not reach the plaintiff's place of business. It is clear also, under the facts and circumstances in this case, that delivery of bags to the United States Postal authorities was delivery to plaintiff. Sweet v. Barney, 23 N.Y. 335, 338 and DeLanoy, Kipp & Swan v. New Amsterdam Casualty Co., 171 Misc. 342, 11 N.Y.S.2d 625, 628.

Second: As to (2) the position taken by defendant is clearly untenable. It undoubtedly is true that while the currency was in the vaults of the Federal Reserve Bank it was the property of the Federal Reserve Bank, but when, in compliance with plaintiff's request, it shipped the currency to plaintiff, title passed to plaintiff upon delivery to its agent, the United States Postal authorities. Nothing more need be said except to note that plaintiff is not denying delivery but on the contrary is admitting that the money was delivered to it.

Third: As to (3) defendant's contention seems to be that because the Federal Reserve Bank collected $60,000 from the Registered Mail Underwriters, advised plaintiff of that fact, and promised plaintiff it would credit its account with $60,000 and thereby withdraw the original charge of that amount by offset as soon as plaintiff

should execute and return the loan receipts, it thereby accepted responsibility for the loss. We are unable to see any merit in this contention and refrain from further discussion because of a related contention made by defendant which will be discussed later in this opinion.

It is next contended that the District Court erred in the admission of evidence in that it permitted the witness Netterstrom, vice president of the Federal Reserve Bank, to testify that it was his understanding when he received the drafts that they were a loan, and it is claimed this evidence tended to vary the legal effect of the drafts. We observe that the plaintiff never saw the drafts and had no knowledge of the wording thereon. We also note that the record clearly shows and it is undisputed that when the drafts were received by the Federal Reserve Bank, the letter in which they had been forwarded definitely stated they were loans, and were to be held until the loan receipts had been signed by plaintiff. Under such circumstances it was not reversible error to admit this testimony.

It is also contended that the Registered Mail Underwriters have been subrogated to the right of recovery on account of the loss by the holdup, that they are in fact the real parties in interest in this action, and that under Rule 17(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the action should have been dismissed. In support of this proposition counsel cites cases to the effect that where the entire loss has been paid by the insurer, an action to enforce a claim of the insured's must be brought in the name of the insurer who has been subrogated to the claim. We do not think those cases are applicable for the reason that here there was no subrogation.

We now address ourselves to what we consider the controlling issues involved in this appeal: the construction of the loan receipts and their relation to the facts in this case.

Defendant's counsel earnestly argues that because each of the six drafts specifically stated that the amount thereof was being paid to the Federal Reserve Bank in full satisfaction and settlement of all claims and demands for loss and damage by perils insured against which occurred October 5, 1938, the loss occasioned by the robbery was paid.

We have already indicated that under the facts and circumstances here the Registered Mail Underwriters had not been subrogated to the plaintiff's right of recovery. Whether the transfer of the $60,000 furnished by the Registered Mail Underwriters operated as a payment of plaintiff's loss depends upon the intention of the parties. Pacific Fire Ins. Co. v. Pennsylvania Sugar Co., 3 Cir., 72 F.2d 958, 959. The District Court found as a fact that the drafts were intended as a loan and not as a payment. As before noted, when Marsh & McLennan presented the drafts they stated that they were also enclosing loan receipts which would have to be signed before the $60,000 would be paid to plaintiff and plaintiff was so advised.

For many years it has been customary for insurers, in order to save rights of their assureds and to promptly place them in funds, so that their business might be continued without embarrassment, to lend to their assureds the amount of the loss, repayable only out of moneys collected on account of the loss. There is a line of cases approving such arrangements and holding that such loans are not a payment of insurance. Luckenbach v. McCahan Sugar Refining Co., 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170, 1 A.L.R. 1522; The Turret Crown, 2 Cir., 297 F. 766, 778; Zaidens v. Salter, 142 Misc. 439, 254 N.Y. S. 602; McCann v. Dixie Lake & Realty Co., 44 Ga.App. 700, 162 S.E. 869; Ash v. Rhodes, City Court, 5 N.Y.S.2d 939; Sorenson v. Boston Ins. Co., 4 Cir., 20 F.2d 640.

DeLanoy, Kipp & Swan v. New Amsterdam Casualty Co., 171 Misc. 342, 11 N.Y. S.2d 625, was a case not at all dissimilar to the instant case. In fact it appears to be identical except that neither the registered mail policy carried by the Federal Reserve Bank which made the currency shipment nor the insurance covering the Warren Bank, consignee of the shipment, provided that they constituted excess insurance. In that case, the Warren Bank ordered from the Federal Reserve Bank of Cleveland, Ohio, $68,000 in currency. The Federal Reserve Bank made up two registered mail packages, addressed to the Warren Bank, containing the $68,000, and sent them by registered mail. Upon their arrival at Warren, Ohio, two employees of the Warren Bank went to the post office, received the packages and on their way back were held up and the packages taken from them. The Federal Reserve Bank was notified of the holdup and, realizing that Warren Bank needed the funds, shipped another $68,000. DeLanoy, Kipp & Swan were assignee of the Warren Bank and sought to recover upon a banker's blanket bond issued to the bank by the defendant. In holding for the plaintiff the court said (11 N.Y.S.2d page 629):

"To argue that, because the insurance companies which wrote the registered mail policies promptly advanced the sum of $68,-000 to the Federal Reserve Bank, no loss was sustained by the Warren Bank, is to overlook the undisputed fact that these companies advanced that money as a loan as is evidenced by the letters from the various companies accompanying their drafts. Such advancements cannot be construed as a concession by the consignee bank or by the Federal Reserve Bank that whatever loss had been sustained due to the robbery was being thus paid. It is evident that the advancements were made as a loan immediately, to meet the needs of banking and commerce.

"Payment by a stranger does not inure to the benefit of a debtor, and most certainly such payment would not operate to discharge the obligation of the debtor, without evidence showing that it was the intention of the parties to have it do so."

In our case it is also to be noted as was the fact in Adler v. Bush Terminal Co.; 161 Misc. 509, 291 N.Y.S. 435, affirmed 250 App.Div. 730, 294 N.Y.S. 726, that there is nothing in the loan receipt which releases any claim that plaintiff has against the defendant upon the policy sued upon, and it is clear, as the District Court found, that the money was advanced as a loan. Moreover, since plaintiff was not a party to the endorsement made by the Federal Reserve Bank upon the drafts, it necessarily follows that it is not bound by any provisions contained therein, and the defendant cannot urge endorsement of the drafts as a defense here.

We have not overlooked the contention made by the defendant that the Registered Mail Underwriters' policies were other insurance carried by plaintiff and that defendant was entitled to contribution. We have examined and considered them, but in the view we have taken it will not be necessary to discuss these contentions.

We now come to a consideration of plaintiff's cross-appeal, by which it claims it is entitled to interest from October 6,

1938, when proof of loss was received and accepted by defendant's agents. Since we hold that defendant was liable for the loss and the policy sued on is an instrument in writing, plaintiff was entitled to interest at five per centum per annum. Ocean Accident & Guarantee Corp. v. Schachner, 7 Cir., 70 F.2d 28, 30. Interest is therefore allowed from and after October 6, 1938.

The judgment of the District Court is modified in accordance with this opinion and as modified it is affirmed.