## Hurst v. Thompson.

*Bill in Equity by Purchaser for Specific Performance of Executory Contract for the Purchase of Lands.*

1. *Specific performance of contract for purchase of land; when equity will not decree.*—The specific performance of an executory contract for the purchase of lands is never decreed, unless it is strictly equitable, and the complainant clearly shows that he is entitled to it.

2. *Forfeiture in contract for sale of land; when waived.*—Where a contract for the sale of land provided that, on failure of the purchaser to pay an installment of the purchase-money at the time it became due, the contract should cease to be one of sale, and become a lease for a stated period, and the installment then falling due should be considered as rent, and the purchaser only paid a part of such installment at the time it became due, but soon thereafter paid the balance, which was received by the vendor without objection, the vendor, by receiving such balance, waived his right to claim the failure to pay the installment at the time it became due as a forfeiture of the contract of sale.

3. *When bill for specific performance of contract of sale of land without equity.*—In 1879, T. sold H. a tract of land for thirty bales of cotton, of a stated average in weight and class, or their value in money, fifteen bales to be delivered at a stated time in the fall of 1880, and fifteen bales on 1st January, 1882, taking H.'s written obligation therefor, and placing him in possession, and executing bond for title on compliance by H. with the terms of sale. In November, 1880, H., having delivered to T. six bales of cotton, sold half of the land to S., S. agreeing to deliver to T. half of the cotton called for by H.'s contract, that is, seven and a half of the nine bales due on the first installment, and half of the fifteen bales due 1st January, 1882. S., in pursuance of his contract of purchase, paid to T. the money value of seven and a half bales of cotton, and also, under an arrangement with H., paid for him the unpaid balance of his half of the first installment, being $83.30, making the whole amount paid by S. to T. $458.30; and thereupon H. transferred to S. his bond for title, with indorsement thereon: "I hereby transfer to S. the within bond as a collateral to secure him in the payment of an amount of money paid by him on my account, and, after twelve o'clock on Monday next, to be disposed of in any way he desires, to raise the amount I am due him." H. having failed to repay to S. on the day specified the $83.30 which S. had paid T. for him, S. soon thereafter delivered the bond to T., having written thereon and signed this endorsement: "In consideration of $458.30, I hereby transfer this bond to T., he having paid, as above stated, the amount. $458.30, H. having failed to comply with his contract as set forth in above transfer with said S." *Held,* that

[Hurst v. Thompson.]

a bill filed by H. against T. alone, not making S. a party, seeking a specific performance of the contract of sale on the facts above stated, and not alleging that T. had any knowledge or notice, at the time he paid S. the $458.30 and took up his bond, that S. had purchased half of the land, and that H. owed S. only $83.30, and not offering to pay the balance due by him, and paid by S. on the first installment, is fatally defective, and the complainant is not entitled to the relief prayed.

APPEAL from Macon Chancery Court:
Heard before Hon. N. S. GRAHAM.

The bill in this cause was filed on 23d January, 1882, and was subsequently amended. The purpose of the bill, and the case made by it and the amendment thereto are sufficiently stated in the opinion. On the hearing, on motion of the defendants, a decree was entered, dismissing the bill for want of equity; and that decree is here assigned as error.

W. THOMPSON, W. C. McIVER, and WATTS & SONS, for appellant.

ABERCROMBIE & GRAHAM and BREWER & BREWER, contra.

STONE, J.—This is a bill for specific performance of an executory contract for the purchase of lands, the purchaser complaining, and praying relief. Such relief is never granted, unless complainant clearly shows himself entitled to it. It is never decreed unless strictly equitable.—1 Brick. Dig. p. 692, § 160; Gentry v. Rogers, 40 Ala. 442.

The bill and amended bill must be construed as one. Governed by its averments, Mrs. Thompson was the owner of the lands in controversy—her statutory separate estate—in quantity four hundred acres. In 1879, an agreement of sale and purchase was entered into between Thompson, representing his wife, and Hurst, the purchaser. The contract was evidenced by two writings; the purchase-obligation signed by Hurst, and bond for title signed by Thompson and wife, attested by two subscribing witnesses. The price agreed to be paid for the land was thirty bales of cotton, averaging five hundred pounds per bale, and of class strict good ordinary, or its value in money at the maturity of the several installments; six bales to be paid October 15th, 1880; nine bales, November 15th, 1880; and fifteen bales, January 1st, 1882. Hurst was to take possession January 1st, 1880, and cultivate the lands. This he did. There was a stipulation in the writings that if Hurst failed to pay the six, nine and fifteen bales, according to contract, in 1880, the contract ceased to be a sale and purchase, and became a lease for one year, when Hurst was to pay six bales of cotton for rent, and surrender the possession to Thompson.

[Hurst v. Thompson.]

So, if paying the installment of 1880, he failed to pay the installment of January, 1882, he forfeited the purchase, became a tenant, and the six and nine bales paid in 1880 discharged the rent for the two years 1880 and 1881. The bond of Thompson and wife was conditioned to make Hurst title, on his compliance with the terms of purchase. October 15th, 1880, or very soon after, Hurst paid Thompson six bales of cotton, but they fell short in weight eighty-three pounds. And soon after November 15th, 1880, there was paid to Thompson in money the market value of the nine bales of cotton, and of the eighty-three pounds deficiency in the six bales. Thompson receipted in full for the first installment. Objection is raised, that the bill fails to aver these installments of six and nine bales were paid by the day they severally fell due. There is nothing in this objection. If Thompson received them after the day for their delivery had passed, he thereby waived any right he may have had to demand payment on the days named, and to claim the failue as a forfeiture.—*Stewart v. Cross*, 66 Ala. 22. So, according to the averments of the bill, Hurst did not forfeit his purchase by failing to pay the installments maturing in 1880. As between him and Thompson, if no other obstacles are in the way, his right to specific performance depends on the payment or tender of the installment due January 1st, 1882.

The bill and exhibit disclose that Hurst did not himself pay the nine bales of cotton due in November, 1880, or the deficiency in the six bales, or their money value. In reference to this payment, the bill shows this state of facts: That Hurst, before November 15th, 1880, sold half the land purchased from Thompson to Thornton,—whether an undivided half, or a described half, does not appear. The alleged terms of sale were, that Thornton was to pay Thompson half the purchase-money; that is, he was to pay seven and a half of the nine bales, unpaid part of the first installment, and pay half of the last installment. It is then averred that Thornton paid the money value of the seven and a half bales, and, also, under an arrangement with Hurst, paid for him the unpaid balance of his half of the first installment, being $83.30. Thereupon Hurst transferred the title bond to Thornton, with the following indorsement upon it: "I hereby transfer to R. J. Thornton the within bond as a collateral to secure him in the payment of an amount of money paid by him on my account, and after twelve o'clock on Monday next to be disposed of in any way he desires, to raise the amount I am due him. November 24th, 1880.

Witness: G. L. Hurst.        (Signed) A. L. C. Hurst."
November 24th, 1880, was Wednesday. The next Monday was 29th. Four days afterwards—December 2, 1880,—the

following indorsement was placed on the bond, and it was de-livered up to Thompson by Thornton : "In consideration of four hundred and fifty-eight dollars 30–100, I hereby transfer this bond to W. P. Thompson, he having paid as above stated, the am't $458.30—A. L. Hurst having failed to comply with his contract as set forth in above transfer with said Thornton.

Dec. 2nd, 1880.      (Signed)          B. J. THORNTON."
All these averments are contained in the amended bill. This left the status of the transaction as follows: Hurst had had the use and occupation of the premises for one year, 1880. He had paid six bales of cotton less eighty-three pounds, and only that much. Thompson had received exactly the same. True, Thornton had paid him, for Hurst, the balance of the install-ment for 1880—$458.30—but that had been repaid to Thorn-ton, when the title-bond was surrendered back to Thompson. So, in fact, Hurst was out only the six bales of cotton, and Thompson had received only that much.

If it be true, as charged, that Hurst had sold half the lands to Thornton, and that, by the terms of the sale, Thornton was to pay half the purchase-money, then it follows that Thornton paid for Hurst only $83.30, and the authority given to Hurst by the indorsement on the bond only empowered him to sell the land to raise $83.30. This being the case, Thornton was guilty of a breach of duty and of trust, when he sold, not only to repay himself the $83.30, but the entire sum paid, $458.30. Had Thompson any knowledge of this alleged sale by Hurst to Thornton, and the breach of trust by the latter? The bill nowhere avers that he had such knowledge. We must, there-fore, suppose he had no knowledge of it. Thornton presented to him the bond he and his wife had given to make title to Hurst. It was indorsed to Thornton, with authority to dispose of it in any way he desired, to raise the amount Hurst was due him, if the same was not paid by twelve o'clock on the next Monday. Monday had passed, and the money was not paid. The writing was silent as to the amount Thornton paid for Hurst. Hurst had owed Thompson $458.30, and this sum Thornton had paid. In the absence of notice that Thornton had purchased half the land, and, for that reason, had paid $375 of the $458.30 on his own account, Thompson was justi-fied in believing the whole amount had been paid by Thornton for Hurst. Hence, he was justified in believing Thornton was authorized to raise the whole $458.30, by disposing of the bond. Acting upon that most natural appearance of the transaction, Thompson returned to Thornton the entire sum he had received from him, $458.30, and took up the bond he had given Hurst to make him title. This is the natural version of the transac-tion, as shown by the papers, and there is not an averment in

the bill that is inconsistent with it. We have, then, a bill by Hurst alone, against Thompson and wife, not making Thornton a party, asking specific performance of a contract of purchase in favor of Hurst, when the bill and exhibit on their face show that largely over half of the first installment has never been paid by Hurst, is yet unpaid to Thompson, and the bill makes no tender or offer of payment of the balance of the first installment. Or, to state it in another form: The bill seeks specific performance in favor of Hurst alone, ignoring Thornton's rights, and not making him a party; and yet shows that half the purchased land had been sold to Thornton, and that, under the terms of that sale, Thornton had paid more than half of the first installment of Hurst's purchase; thus, claiming the benefit of Thornton's payment, and ignoring his right to share in the land. Or, last, the bill tenders to Thompson the privilege of stepping into the shoes of Thornton, as purchaser of half the land, as the best that will be accorded to him under his agreement of rescission with Thornton; and this in the absence of all averment, charging Thompson with notice that Thornton had ever made such agreement of purchase, and hence, in the absence of all imputation of fault or bad faith on the part of Thompson. The bill is fatally defective.

There are supposable categories, in which the complainant may be entitled to relief. We will, therefore, so modify the chancellor's decree, as to make it a dismissal without prejudice. Thus modified, the decree of the chancellor is affirmed.