# Nelson *v.* Sanders.

### *Action of Assumpsit.*

123　615
125　139
f125　711

1. *Vendor and purchaser; forfeiture of contract of sale; election.*
Where, in a contract for sale of land, it is provided that the purchase money is to be paid in annual instalments and it is expressly stipulated that upon the failure of the purchaser to pay any one of the instalments at maturity, time being of the essence of the contract, the said contract of sale shall, from the date of such failure, he null and void, and all previous payments shall be forfeited to the vendor, and the relation of landlord and tenant shall arise between the parties from the January 1st immediately preceeding the date of the default, the purchaser to pay a specified rent for occupying the premises from January 1st to the time of default, the fact that upon the failure of the purchaser to make the annual payments in full for two successive years the vendor waived such breaches and accepted an amount less than the instalments agreed on as payment on account of the purchase price, does not constitute an election by the vendor to treat the other party to the contract solely as a purchaser, which precludes him, upon a subsequent failure of the purchaser to pay an annual instalment, from asserting the forfeiture of

the contract of sale, and under its alternative provision re-
cover the rent due by reason of the establishment of the re-
lation of landlord and tenant.

APPEAL from the Circuit Court of Pike.
Tried before the Hon. J. W. FOSTER.

This action was brought by the appellant, R. M. Nel-
son, against A. C. Sanders, to recover an amount alleged
to be due to the plaintiff as rent for "240 acres of land
in Pike county, Alabama, known as the R. F. and J. A.
Park lands." The defendant pleaded the general issue
and payment.

On the trial of the cause, the following facts were
shown: On February.26, 1895, S. H. Wilson and J. W.
Law, entered into a contract for the purchase of 240
acres of land in Pike county, Alabama, from R. M. Nel-
son, which lands were known as "The R. F. and J. A.
Park lands." This contract specifically describes the
lands purchased, and excluding said description of the
lands and omitting that portion which is copied in the
opinion, said contract was in words and figures as fol-
lows: "This contract made this 26th day of February,
1895, between R. M. Nelson, party of the first part, and
Simeon H. Wilson and John W. Law parties of the sec-
ond part, Witnesseth: That in consideration of the
stipulation hereinafter contained, and the payments to
be made as hereinafter specified, the first party agrees to
sell unto the second parties, the following described real
estate, situated in Pike county, State of Alabama, to-wit:
[Here follows the description of the land.]

"And the said second parties in consideration of the
premises, hereby agree to pay to the order of the said
first party, the following sums at the several times named
below." Here follows the stipulation for the payment of
$250 on November 1st of each year from 1895 to 1901, in-
clusive, for which several amounts the parties of the sec-
ond part executed their several promissory notes. It
was then stipulated in said contract that the parties of
the second part should not cut timber from said prop-
erty, except for necessary fuel, and all improvements
placed upon the premises should remain thereon and
should not be destroyed or removed until final payment,

and that they should pay the taxes lawfully imposed upon said premises, and it was further stipulated: "In case the said second parties, their legal representatives or their assigns, shall pay the several sums of money aforeaid, punctually and at the several times above limited, and shall strictly and literally perform all and singular the stipulations and agreements aforesaid, after their true tenor and intent, then and thereupon the first party will make unto the said second parties, their heirs or assigns (upon the surrender of this contract) a warranty deed, conveying the title to said aforedescribed lands, and premises in fee simple."

This contract was duly signed under seal by S. H. Wilson and J. W. Law, and R. M. Nelson. On December 5, 1895, S. H. Wilson and J. W. Law sold and transferred their contract of purchase of said land to A. C. Sanders, the defendant in this suit, which transfer was indorsed on the back of said contract. There was also indorsed on the back of said contract the agreement on the part of A. C. Sanders to assume payment of the notes as stipulated for in said contract.

On December 6, 1895, A. C. Sanders entered into a contract with R. M. Nelson with reference to the obligations of the contract made by said Nelson with S. H. Wilson and J. W. Law and which had been transferred to Sanders, and in this later contract A. C. Sanders "agrees with the said R. M. Nelson to assume the obligations of said contract, and the said R. M. Nelson on his part agreed that the said A.. C. Sanders will take the place of S. H. Nelson and John W. Law."

A. C. Sanders made the following payments on the purchase money of said lands: $200 on December 6, 1895; $154 on November 18th, 1896, $109.30 on January 31, 1898, which payments were accepted and retained by Nelson as payments on the purchase money of said lands.

In the year 1898, said A. C. Sanders made a crop of cotton on said land, and in the month of October, 1898, removed from said premises and sold four bales of middling lint cotton, weighing 500 pounds each, of the value of $90. Said A. C. Sanders did not pay the said R. M. Nelson, or any one for him, anything in the fall or win-

ter of 1898, or at any other time, except as hereinbefore stated. In the month of November, 1898, said R. M. Nelson demanded of the said A. C. Sanders four bales of middling lint cotton, weighing 500 pounds each as rent for said land for the year 1898, which said A. C. Sanders failed and refused to pay.

This was all the evidence introduced in the case. The plaintiff requested the court to give to the jury the following written charge: "If the jury believe the evidence, they will find for the plaintiff." The court refused to give this charge, and the plaintiff duly excepted and also duly excepted to the court's giving at the request of the defendant, the general affirmative charge in his behalf.

There were verdict and judgment for the defendant. The plaintiff appeals, and assigns as error the refusal of the court to give the general affirmative charge requested by him, and the giving of the general affirmative charge requested by the defendant.

FOSTER, SAMFORD & CARROLL, and WM. R. NELSON, for appellant.—In the fall of 1898 Sanders failed to make a payment as required by the terms of his contract, and Nelson exercised the right of election given him by the terms of the contract, and demanded rent for the year 1898. This, according to the express terms of the contract he had a right to do, and having exercised the election, he ceased to be the vendor and immediately became the landlord, with his rights as such dating from the 1st of January, 1898.—*Moses v. Johnson*, 88 Ala. 520.

It is true that on January 1st, 1898, Sanders made a payment of money to Nelson, which was received and applied to the purchase price of the land named in the contract, but of necessity, and by operation of law, was applied to the payment of obligations under the contract, that the evidence discloses were owing and past due at the time of payment, and could not possibly have had any effect on the payment, to become due on November 1st, 1898; the evidence showing, without conflict, that there were payments for previous years still unpaid, and no agreement between the parties, or direction from Sanders, as to how the money was to be applied. Therefore, the contract not having been declared forfeited on

January 1st, 1898, Nelson was bound to apply such money as was paid on January 1st, 1898, to the balance then due on the unpaid purchase price.—*Heard v. Pulaski,* 80 Ala. 502.

We do not controvert the doctrine that where there is an election given, and the election is once made, that that election is irrevocable; but under this contract there is an annual election, the exercise of which as to any one year, would be irrevocable as to that year, but would not apply to any subsequent year, and to hold otherwise would be to nullify a contract made between the parties, and this can not be done.—Chitty on Contracts, 72, 73; 3 Brick. Dig., 147, § 86.

CARMICHAEL & BRENNAN, *contra.*—Under the facts of this case, as shown by the evidence on the trial of the case *de novo,* the relation of landlord and tenant did not exist between the plaintiff and the defendant; and, therefore, the plaintiff can not maintain the suit. There is no provision in the contract, that a partial compliance with the requirement to pay the notes when they respectively fall due, will meet the exigency. When Sanders failed to pay the note for $250.00 due November 1st, 1896, in full, Nelson could elect to treat him as a purchaser of the land, bound to pay the notes as the consideration of the purchase of the lands, or, as a tenant, liable to pay four bales of lint cotton of the weight of five hundred pounds each, as rent of the land. He elected to treat him as a purchaser, and received from him payments on the purchase money for said lands, and the election once made, was, without the consent of the other, irrevocable.—*Collins v. Whigam,* 58 Ala. 438; *Stewart v. Cross,* 66 Ala. 22.

TYSON, J.—The defendant by his contract with the plaintiff, appellant, became bound by every term of the contract made between Wilson and Law and appellant. He took their place, assumed every obligation imposed by it, and became entitled to all the benefits conferred by it. This contract was clearly an agreement on the part of the defendant to purchase the lands described in it and bound him to pay the purchase money in the install-

ments at the date fixed for their maturity, and bound the plaintiff to make to him a warranty deed to the lands upon the payment by him of the purchase money and a fulfillment by him of other obligations which he assumed under the contract not necessary here to notice *in extenso.*

After clearly fixing the status of the parties as vendor and vendee, the contract contains the following provision : "But in case the said second parties shall fail to make the payments aforesaid, or any of them, punctually and upon the strict terms, and at the times above limited, and likewise to perform and complete all and each of the agreements and stipulations aforesaid, strictly and literally, without any failure or default, time being of the essence of this contract, this contract shall, *from the date* of such failure be null and void, and all rights and interests hereby created or then existing in favor of the said second parties their heirs or assigns, or derived under this contract, shall utterly cease and determine, and the premises hereby contracted (for) shall revert to and revest in the said first party, his heirs or assigns, (without any declaration of forfeiture or act of re-entry, and without any other act by said first party to be performed and without any right in said second parties of reclamation or compensation for money paid or improvements made) as absolutely, fully and perfectly as if this contract had never been made. And it is hereby further covenanted and agreed by and between the parties hereto, that immediately upon the failure to pay any of the notes above described, all previous payments shall be forfeited to the party of the first part, and the relation of landlord and tenant shall arise between the parties thereto for one year, from January 1st immediately preceding the date of the default, and the said party of the second part shall pay rent at the rate of four bales of middling cotton to weigh 500 pounds, each, to be delivered in Troy, Ala., for occupying the premises from the said January 1st to the time of default, such rent to be due and collectable immediately upon such default."

It is obvious that this provision was inserted in the contract for the benefit of Nelson, the vendor, in order that he might get some remuneration for the use of the

lands by the purchaser in case he made default in the payment of his purchase money installment, and as far as possible to hedge about his liability as mortgagee, and prevent the relation of mortgagor and mortgagee from existing, thus cutting off the rights of the purchaser to charge him with all moneys paid him under the contract of purchase as a credit upon his debt. However, it is clear that it was the intention of Nelson and the defendant to secure to Nelson a rental for his lands, and give to him a remedy for its enforcement by creating the relation of landlord and tenant, in the event of a failure of the defendant to pay an installment for the year during which such default was made. That it was competent for the parties to make such a contract is not made a question in this case; and, indeed, it could not be successfully made so. Similar contracts have been recognized and enforced by this court, and it is inconceivable how any good reason can be assigned against their validity and enforcement.

As to whether or not an option was given to the defendant to elect to pay rent, instead of paying the purchase money installment when it fell due, it is unnecessary here to decide, since no such option was ever asserted by him.—*Collins v. Whigam,* 58 Ala. 438.

By the very terms of the contract it became void from the date of the failure of Sanders to pay the installment on November 1, 1896, as a contract of purchase and sale unless its breach was waived by Nelson. The payment of the installment by Sanders was a condition subsequent, capable only of being fulfilled by him, the noncompliance with which operated to destroy the contract as one of sale, but effectuated the obligation of Sanders to pay the stipulated rent if Nelson had insisted upon a breach of the condition. It appears, however, that Nelson did not, in 1896 or 1897, insist upon a breach of the contract as one of purchase and sale, but accepted from the defendant $154 on the 18th day of November, 1896, and $109.30 on the 1st day of January, 1898. The payment by the defendant of these sums and the acceptance of them by Nelson, was a recognition by each of them of the existing binding force of the contract as one of purchase and sale. Neither could for the year 1896 or

1897 ever contend against the consent of the other that Sanders was a tenant, or that Nelson was a landlord of these lands for those years. They had the right to waive a breach of the contract and to treat it as though no breach had ever occurred. This is all that their conduct amounted to. There was no legal or moral duty which required Nelson to insist upon the breach, nor would he have been allowed to do so after accepting the payment of this money on the purchase. Nor was there any such duty upon the defendant, and clearly he would not be permitted to do so without paying the rent for the use of the lands for those years. So then on the 1st day of November, 1898, when the next installment fell due, the contract of purchase and sale being in full force and effect, the defendant again committing a breach by his failure to pay, Nelson insisted upon the breach and demanded of him the payment of the four bales of cotton as rent for the year 1898. This he had a right to do by the very terms of the contract, all along recognized by them as valid and binding.

The contention that because Nelson had waived the breaches committed by the defendant during the years 1896 and 1897, he thereby elected to treat him solely as a purchaser and was forever precluded from having any advantage under the alternative provision of the contract made for his benefit, is unsound. This was the status of the parties when the contract was entered into between them. So Nelson never had an opportunity to elect or choose to treat him as a purchaser. Election necessarily involves a choice between two things. He could, it is true, have elected to treat the contract as at an end or to treat it as still subsisting. He chose the latter course, but by doing so, he did not repudiate one of the terms of the contract and adopt the other. On the contrary, when he chose, with the consent of the defendant, to treat the contract as still binding, he elected to affirm the binding efficacy of every term it contained. It is clear the doctrine of election has no application to the facts of this case.

The affirmative charge should have been given for the plaintiff instead of for the defendant.

The judgment is reversed and the cause remanded.

HARALSON, J., not sitting.