17 So.2d 232

**SPANGLER v. BARBER et al.**

6 Div. 150.

Supreme Court of Alabama.

Jan. 13, 1944.

Rehearing Denied March 23, 1944.

Hiram Dodd, of Birmingham, for appellant.

Barber & Barber, of Birmingham, for appellees.

BROWN, Justice.

Appellees being the owners in fee simple of lots 2 and 3 in block 20, in Coleman's Addition to Green Springs, situated within the corporate limits of the City of Birmingham, on January 12th, 1927, entered into two contracts, one in respect to each of said lots, with one C. M. Harlow, leasing the same to Harlow for a term beginning on the 12th of January, 1927, and ending on the 12th day of May, 1930, for use by him as a stable, horse lot or for gardening or residence, both of said lots then being vacant.

In consideration of which Harlow agreed to pay a rental for said lot No. 2, one thousand dollars, $200 in cash, and the balance of $800, in monthly installments of $20.00 each, evidenced by forty simple promissory notes payable in advance on the 12th of each succeeding month, the last maturing May 12th, 1930. And for lot No. 3, a rental of $500, payable $100 in cash, and $10 monthly thereafter, payable in advance on or before the 12th of each month, evidenced by 40 simple promissory notes.

Said notes as to each of said lots, as provided in the "lease-sale contract" bearing "legal interest payable at the office of lessors 2331 3rd Avenue in Birmingham, Alabama."

It was also stipulated in the "lease-sale contract" that "this Lease being terminated, to surrender quiet and peaceable possession of said premises in like good order as at the commencement of said term, natural wear and tear excepted.

"In the event of the employment of an attorney by the party of the first part, on account of the violation of the conditions of this Lease by the party of the second part, the party of the second part hereby agrees that he shall be taxed with said attorney's fee. * * *

"It is understood and agreed that at the end of said term if the party of the second part has complied with each and all conditions of this Lease, then the party of the first part agrees that the rent paid under his Lease shall be considered a payment for said property, and the party of the first part shall make and execute a deed with warranty conveying said property to the party of the second part.

"It is further understood and agreed that if the party of the second part fails to pay the monthly rent as it becomes due, and becomes as much as two months in arrears during the first year of the existence of this Lease, or as much as three months in arrears on such payments at any time thereafter, or should fail to pay the taxes on the said property when the same becomes due, or should fail to comply with any condition or requirement therein, then on the happening of any such event by the party of the second part forfeits his rights to a conveyance of said property, and all money paid by the party of the second part under this contract shall be taken and held as payment of rent for said property, and the party of the second part shall be liable to the party of the first part as a tenant for the full term of said Lease, and the provisions herein 'that the rent paid under this Lease shall be considered a payment for said property, and the party of the first part shall make and execute a deed with a warranty of title conveying said property to the party of the second part,' shall be a nullity and of no force or effect; and the failure of the party of the second part to comply with any of the conditions of this instrument shall ipso facto render the said provision a nullity, and make the said party of the second part a lessee under this instrument, without any rights whatever except the rights of lessee without any notice or action whatever upon the part of the party of the first part. * * *."

On April 15th, 1927, Harlow, with the consent of the lessors, assigned the "lease-sale contract" to Spangler, who endorsed each of the unpaid notes, and paid the notes of each series maturing thereafter up to and including the 17th due June 12th, 1928, and defaulted in the payment of the others.

Appellees filed the bill in this case, August 11th, 1942, more than twelve years after the end of the term and the maturity of the last of the notes in each series, against appellant, praying that the court ascertain the amount of the indebtedness evidenced by said unpaid notes, the amount that will be required to redeem the lots from the City of Birmingham, a reasonable solicitor's fee for services in the prosecution of this case, and fix a date for the payment

of the aggregate amount of the indebtedness, solicitor's fee and costs, to the Register of the Court.

That the court retain jurisdiction until the amount ascertained by the decree and the costs are paid into the registry of the court, and if the defendant shall make default, that the court order "said lands to be sold according to law in such cases provided the proceeds thereof to apply to the payment of said judgment or decree in full or pro tanto, as the case may be; and that in the event said lands, at said sale thereof, do not bring a sufficient amount to fully satisfy said judgment of this Court, that this Court make and enter its decree of judgment, with waiver of exemptions as to personal property against this defendant and in favor of these plaintiffs for such deficit," and for general relief.

The defendant demurred on grounds among others that the bill is without equity, and on the demurrer being overruled, answered setting up that the debt evidenced by said notes and contract are barred by the statute of limitations.

On final hearing, on submission on pleading and proof, the court entered a decree granting complainants relief. The basis of the relief appears from the following pronouncement in the decree. "Complainants by virtue of their retention of title contracts have separate and several liens on said lots subject matter of this suit particularly described as follows: Lots 2 and 3, in Block 20, according to Coleman's Addition to Green Springs, Located in Jefferson County, Alabama."

No authority is cited by the court or the appellees to sustain this pronouncement, and we are not aware of any principle that warranted any such relief. By the very terms of the contract, and its sole legal effect, it was but a lease with an obligation resting on the lessee originally, and on his assignee by virtue of his assumption of the obligations of the contracts, and the endorsement of the notes, with complainants' consent, to pay the rent evidenced thereby, with a condition that if all the obligations of the contract were kept and observed by the lessee, at the end of the term, the lease ripened into a sale, but by the very terms of the lease, the default of the assignee in not paying the notes "ipso facto rendered said provision a nullity."

When the bill was filed the complainants had the legal title, encumbered by the sale by the City of Birmingham, and the right to possession.

A vendor's lien, when lands are sold and conveyed without security, is a creature of equity, founded on the principle that it is unconscionable for one to get and keep the estate of another without paying the agreed purchase price therefor. Conveyance of the legal title—the vendor's estate in the land, without other security—is the fact out of which the lien arises. Driver v. Barnes, 223 Ala. 315, 135 So. 445; Kinney v. Ensminger, 94 Ala. 536, 10 So. 143.

A kindred lien may be created by a conveyance of the legal title by the vendor to the vendee, with express retention of such lien, in the conveyance. Bankhead et al. v. Owen, 60 Ala. 457.

The pleading and proof do not bring the instant case within these principles. Here there was nothing more than a lease, with a condition subsequent that if at the end of the term the lessee had paid all the installments of rent, then the transaction would become a sale and the money paid as rent would be treated as payment of the purchase money, but if the lessee should default for three months, this fact of itself would render the condition subsequent void.

To warrant specific performance in equity at the instance of the vendor there must be an "unequivocal, and unconditional promise on the part of the purchaser to buy, and on the part of the vendor to sell, on [fixed] terms." Eaton v. Sadler, 215 Ala. 161, 110 So. 10, 11; George E. Wood Lumber Co. v. Morris et al., 225 Ala. 281, 142 So. 508.

The contract in the last cited case was a contract on the part of the complainant to sell and on the part of the defendants to purchase, the payments of the purchase money to be made in installments with condition subsequent, "if the purchasers shall make default in respect to the covenants and agreements, which shall continue [for] sixty days, this contract shall become and is hereby made, a lease between the parties." 225 Ala. 282, 142 So. 508. The court held that this condition was for the benefit of the seller and that a default by the purchaser in the payment of the installments did not "produce a rescission of his purchase * * * against the will of the vendor," because this would allow him to take advantage of his own default without any advantage to the vendor.

The contract in the case at bar contemplated that it should continue a lease until the end of the term and then, if the tenant had paid all the installments of rent, he had the right to treat it as a contract of purchase. However, his default "ipso facto" voided that condition without affirmative action on the part of the vendor. Davis v. Folmar, 203 Ala. 336, 83 So. 60; Nelson v. Sanders, 123 Ala. 615, 26 So. 518.

The averments and proof do not make a case for specific performance. The undisputed evidence shows that said lots are and have been vacant from the inception of the transaction to the filing of the bill, and the only obligation in the contract left intact—by the failure of the tenant to pay rent—was the obligation to pay. As to this the complainant has a complete and adequate remedy at law. Merchants' Nat. Bank of Mobile v. Roche, 227 Ala. 639, 151 So. 591; Lee v. Gaines et al., Ala. 244 Ala. 664, 15 So.2d 330; Pate v. Bruner, 243 Ala. 648, 11 So.2d 356.

The bill is without equity and the court erred in overruling the general demurrer attacking the bill for want of equity and in not dismissing the same on the final hearing.

Moreover, the proof does not show mutual accounts between the parties within the influence of § 39, Tit. 7, Code 1940. Ware v. Manning, 86 Ala. 238, 5 So. 682. The most the evidence shows is a fixed indebtedness due to complainants evidenced by notes and a counterclaim in favor of the defendant against one of the conplainants, and an agreement that such counterclaim was to be credited on the notes as they matured and were paid. No payments have been made on any of said notes since the maturity of the 17th note, which was paid in full on its maturity June 12th, 1928. The entire indebtedness, evidenced by the remaining unpaid notes, matured more than ten years before the bill was filed.

The agreement noted as to the counterclaim did not prevent the running of the statute. Code 1940, Tit. 7, § 40; Whitfield v. Hatch et al., 235 Ala. 38, 177 So. 149; Ware v. Manning, 86 Ala. 238, 5 So. 682.

The decree of the circuit court is, therefore, reversed and one here rendered dismissing the bill, at the costs of the appellees.

Reversed and rendered.

GARDNER, C. J., and THOMAS and LIVINGSTON, JJ., concur.