58 So.2d 581

## McKENZIE et al. v. NORTH RIVER INS. CO.

### 6 Div. 50.

Supreme Court of Alabama.
Dec. 21, 1951.

Rehearing Denied May 15, 1952.

Ray & Giles, Birmingham, for appellant.

Davies & Williams, Birmingham, for appellee.

LIVINGSTON, Chief Justice.

The bill of complaint as last amended filed by appellee alleges in substance that the appellee insured appellants' dwelling at 3401 North 39th Street, Birmingham, Alabama, against loss or damage by aircraft in the amount of $2150.00 for one year beginning May 22, 1945. That on May 26, 1945, said dwelling was damaged by aircraft operated by an agent of the U. S. Government.

The bill further avers that on May 11, 1948, appellee loaned or advanced to respondents $2,537.00 being *"the full amount of the policy together with interest thereon."* A "loan receipt", which is exhibit "A" to the bill, executed by appellants reads in part as follows:

"As a loan, without interest, repayable only in the event and to the extent of any net recovery the undersigned may make from any person, persons, corporation or corporations, or other parties, causing or liable for the loss or damage to the property described below, or from any insurance effected on such property, and as security for such repayment the undersigned hereby pledges to the said 'company' all his, its or their claim or claims against said person, persons, corporation or corporations or other parties, or from any insurance carrier or carriers, and any recovery thereon, and hereby delivers to said 'company' all documents necessary to show his, its or their interest in said property.

"The undersigned convenants that no settlement has been made by the undersigned with any person, persons, corporation or corporations, or other parties against whom a claim may lie, and no release has been given to anyone responsible for such loss and that no settlement will be made, nor release given without the written consent of the said company; and that the undersigned covenants and agrees to cooperate fully with the said company, to promptly present claim and, if necessary, to commence, enter into and prosecute

suit against such person, persons, corporation or corporations, or other parties, through whose negligence or other fault the aforesaid loss was caused, or who may otherwise be responsible therefor, with all due diligence, in his, its, or their own name.

"In further consideration of said advance the undersigned hereby guarantee(s) that he, it or they are the owner(s) of said property and entitled to recover upon said claim for loss or damage thereto, and hereby appoint(s) the manager and/or agents of said 'company' and their successors severally, his, its or their agent(s) and attorney(s) in fact, with irrevocable power, to collect any such claim or claims, and to begin, prosecute, compromise or withdraw in his, its or their name, but at the expense of the said 'company' any and all legal proceedings that the said 'company' may deem necessary to enforce such claim or claims, and to execute in the name of the undersigned, any documents that may be necessary to carry the same into effect for the purpose of the agreement.

"Any legal proceedings are to be under the exclusive direction and control of said 'company'."

The bill further alleges that the appellants recovered from the United States Government $5,982.15 for damages to the building by Government aircraft and that the said amount was a "net recovery".

The bill prays the court to establish a trust in favor of appellee to the extent of $2,537.00 plus interest in monies held by respondent Bank for Savings and Trust (said defendant did not join in the appeal and is a mere stakeholder) and also an equitable lien against a certain piece of realty, which it is alleged was acquired by appellants in part with monies recovered by appellants from the United States Government.

The appellants filed in the lower court many grounds of demurrer testing the sufficiency of the bill. The trial judge overruled the demurrer to the bill as last amended and from this adverse ruling the appellants prosecute this appeal.

The insurance policy involved in this case was not made a part of the bill of complaint nor are its terms alleged. We cannot find where this court has ever considered the legality of a "loan receipt" such as is now before us. Appellee has cited us to respectable authorities which have upheld "loan receipts". Luckenbach et al. v. W. J. McCahan Sugar Refining Co. et al., 248 U.S. 139, 39 S.Ct. 53, 55, 63 L.Ed. 170, 1 A.L.R. 1522; First National Bank of Ottawa v. Lloyd's of London, 7 Cir., 116 F.2d 221, 132 A.L.R. 599.

A study of these and other related authorities reveal that at the outset the courts upheld such agreements where the insurer was not liable in all events but its liability was contingent upon the insured's failure to secure redress against a tortfeasor. Mr. Justice Brandeis in the Luckenbach case stated that "It is essential to the performance of insurer's service, that the insured be promptly put in funds, so that his business may be continued without embarrassment * * *. The shipper could not have been obliged to surrender to the insurers the conduct of the litigation against the carrier, until the insurers had paid. In consideration of securing them the right to conduct the litigation, the insurers made the advances. It is creditable to the ingenuity of businessmen that an arrangement should have been devised which is consonant both with the needs of commerce and the demands of justice."

Many of the cases involving loan agreements have been collected by the editors of American Law Reports and are ably reviewed in 157 A.L.R. 1261. The reasoning of the Luckenbach case has already been discussed and the facts there amply sustain the decision. Other courts have sustained loan agreement on various theories when the facts justified such a holding.

After a study of the authorities and considering the allegations of the present bill, we are impressed with the words of Justice Personius in his opinion in the case of Yezek v. Delaware, Lackawanna &

Western R. Co., 176 Misc. 553, 28 N.Y.S.2d 35, 38. Justice Personius there observed:

"On paying the plaintiff, it (the insurer) was entitled to a receipt and release. It elected to take a loan agreement. However, it was 'payment without regard to its form.' The so-called loan was a fiction. A subterfuge unnecessary either to protect the insurer or to secure prompt payment to the insured.

"The plaintiff is required to repay 'the loan' only in the event that he recovers of this defendant. Suppose he fails to recover and sues the insurer on the policy for his damage, would the insurer still say it intended to make a loan, not a payment?"

On demurrer the pleadings will be construed most strongly against the pleader. For aught that appears from the averment of the bill here under review appellee has done nothing but pay to the appellant that which was due under a contract of insurance without showing any right to be subrogated to the recovery from the government. The policy of insurance is not before us nor its terms averred, and it will be presumed under the stated rule of pleading that it called for nothing but payment in the event of loss with the right of subrogation excluded.

The bill avers that a policy of insurance was in force by appellee in favor of appellant against damage by aircraft to appellant's property. It further states that appellant's property was damaged by aircraft. It would thus appear that the only remaining thing to be done as between the parties would be payment by the insurer and receipt by insured. Adopting the words of Justice Personius in the case of Yezek v. Delaware L. & W. R. Co., supra, the "loan" was "payment without regard to its form." The so-called loan is "a fiction, a subterfuge unnecessary either to protect the insurer or to secure prompt payment to the insured."

Appellant's demurrer takes the point that the loan agreement is without consideration. Such a point under customary practice and procedure is defensive in nature and not to be tested by demurrer. Here, however, it affirmatively appears from the allegations of the bill that the appellee was appellant's insurance carrier—that a loss occurred—that a "loan" in the exact amount of the policy with interest thereon was made. What was the consideration for the "loan"? The bill discloses none but instead avers sufficient facts which lead us to conclude there was no consideration for the "loan receipt". In such a case, where the basis of the complaint is a contract, which from the allegation of the bill affirmatively appears to be without consideration, such matter is not defensive but goes to the equity of the bill which can be attacked by demurrer. Spangler v. Barber et al., 245 Ala. 386, 17 So.2d 232.

As heretofore noted the appellee failed to allege the terms of the insurance policy nor was the policy made an exhibit to the bill, and with regard to the consideration of the "loan receipt" we deem the terms of the policy necessary to determine whether or not it called for anything other than payment. The general rule of equity pleading is that a bill must set forth a copy or aver the terms of an instrument vital to plaintiff's demand. Roney v. Dothan Produce Co., 217 Ala. 475, 117 So. 36.

We are convinced that the bill as now framed, relying as it does solely upon the "loan receipt" which from all the allegation is tantamount to nothing more than payment of the policy of insurance, contains no equity and in the absence of any allegation of independent equities the demurrer aptly raising these deficiencies was due to be sustained.

The complainant is hereby given thirty days in which to amend its bill of complaint.

It results that the cause is due to be reversed and the same is remanded to the lower court for further proceedings.

Reversed and Remanded.

BROWN, FOSTER, SIMPSON and STAKELY, JJ., concur.

LAWSON, J., dissents.

GOODWYN, J., not sitting.