189 So.2d 330

**COMMERCIAL UNION FIRE INSURANCE
COMPANY OF NEW YORK**

v.

John PARVIN.

6 Div. 54.

Supreme Court of Alabama.

June 30, 1966.

Tweedy & Beech, Jasper, for appellee.

Mead, Norman & Fitzpatrick, Birmingham, for appellant.

LAWSON, Justice.

This is an action by John Parvin against Commercial Union Fire Insurance Company of New York, a corporation, on a fire insurance policy covering a dwelling house in Parrish, Walker County, Alabama.

The complaint consists of a single count which is substantially in Code form. Under a plea of the general issue in short by consent in the usual form, the defendant insurance company relied primarily upon the defense that the plaintiff, Parvin, had no insurable interest in the dwelling house at the time it was completely destroyed by fire.

There was a verdict in favor of Parvin in the sum of $3,050. Judgment followed the verdict. After its motion for new trial was overruled, the insurance company appealed to this court.

On September 10 or 11, 1958, Sumiton Land Company, Inc., hereinafter referred to as the Land Company, entered into a lease-sale contract with John Parvin,

leasing to him a house and lot in the town of Parrish for a term of 144 months for a recited consideration of $1,900, payable in monthly installments of $22.28 on the first day of each month. The monthly payments included principal, interest and the cost of insurance, the contract providing: "The Company shall keep the improvements on said real estate insured against loss or damage by fire, lightning and tornado in an amount equal at least to the balance of the consideration due hereunder, * * *." But the premium on the insurance to be provided by the Land Company was to be paid by Parvin. Parvin was required to pay the taxes.

The contract contains a condition subsequent that if at the end of the term Parvin had paid all of the installment payments and taxes, and had complied with all the conditions of the contract, then the transaction should be treated as a sale, that is to say, the Land Company would treat the rent paid under the lease as a payment for the property and would execute a deed thereto to Parvin.

The contract provided for a forfeiture of the lease upon failure of Parvin to pay the rents as they became due, the right of the Land Company to reenter the premises and terminate the lease being reserved without the necessity of giving notice to or making demand upon Parvin for payment of rents due.

It was further provided in the contract that if Parvin became in arrears as much as thirty days or should fail to pay the taxes or to comply with any other condition of the contract:

"* * * then on the happening of any such event, the Lessee [Parvin] forfeits his rights to a conveyance of said property, and all money paid by the Lessee [Parvin] under this contract shall be taken and held as payment of rent for said property, and the Lessee [Parvin] shall be liable to the Company [Lessor] as a tenant for the full term of said lease,

and the provisions herein 'that the sums paid under this contract shall be considered as payment in full for said property, and the Company [Lessor] shall deliver a warranty deed, subject to the exceptions noted above, conveying said property to the Lessee [Parvin]' shall be a nullity and of no force and effect; and the failure of the Lessee [Parvin] to comply with any of the conditions of this instrument, without any other or further notice, shall ipso facto render the said provision a nullity, without any rights whatever except the rights of a lessee, without any notice or action whatever upon the part of the Company."

Parvin went into possession shortly after the execution of the contract.

On April 18, 1959, the appellant insurance company, through its agent, the Jim Millican Insurance Agency of Cordova, issued to Parvin the insurance policy sued upon in this case in the amount of $5,000. The agent who sold the policy was advised by Parvin that the latter was purchasing the insured property from the Land Company under a lease-sale contract.

The policy sued on provided coverage only "to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace with material of like kind and quality within a reasonable time after such loss * * * *nor in any event for more than the interest of the insured,* * * *." (Emphasis supplied.)

That insurance policy was in force when, on or about June 27, 1959, the dwelling house was completely destroyed by fire. The appellant insurance company refused payment to Parvin in any amount, hence this suit.

■ A purchaser under a lease-sale contract under the terms of which the title is not to pass until payment of the purchase price has an insurable interest. Murray v. Webster, 256 Ala. 248, 54 So.2d 505; Robin-

son v. Wade, 220 Ala. 693, 127 So. 170; Bowden v. Bank of America Nat. Trust & Savings Ass'n, 36 Cal.2d 406, 224 P.2d 713; Stallings v. Fidelity-Phenix Fire Ins. Co. of New York, 306 Ill.App. 235, 28 N.E.2d 322; Moline Timber Co. v. Schaad, 181 Ark. 854, 28 S.W.2d 336; North River Ins. Co. v. Sanguinetti, 38 Ariz. 221, 298 P. 922; McCoy v. Continental Ins. Co., 326 Mich. 261, 40 N.W.2d 146. See Continental Fire Insurance Co. v. Brooks, 131 Ala. 614, 30 So. 876; Union Insurance Society of Clanton v. Sudduth, 212 Ala. 649, 103 So. 845; Alabama Farm Bureau Mut. Ins. Co. v. Nixon, 268 Ala. 271, 105 So.2d 643; Pacific National Fire Ins. Co. v. Watts, 266 Ala. 606, 97 So.2d 797.

■ But an insured must have an insurable interest in the insured property at the time of the loss. Girard Fire & Marine Ins. Co. v. Gunn, 221 Ala. 654, 130 So. 180, and cases cited.

The appellant insurance company contends that the trial court erred to a reversal in refusing to give its affirmative instructions duly requested in writing because under the evidence Parvin had no insurable interest in the subject property in that his rights as a lessee had been ended and his rights under the purchase provisions of the lease-sale contract had been terminated.

■ In considering this contention, we must review the tendencies of the evidence in the light most favorable to Parvin without regard to any view we may have as to the weight of the evidence; and must allow such reasonable inferences as the jury was free to draw, not inferences which we think the more probable. Fowler Rental Equipment Co. v. Skipper, 276 Ala. 593, 165 So.2d 375, and cases cited; Mobile Cab & Baggage Co. v. Busby, 277 Ala. 292, 169 So. 2d 314; South Highlands Infirmary v. Camp (Ala.) 180 So.2d 904.

The appellant's evidence showed that Parvin had made only five payments prior to the fire, the last being made on or about March 28, 1959, for the month of January,

1959. Hence, according to the appellant's evidence, Parvin was five months in arrears when the fire occurred on June 27, 1959, and four months in arrears when he was served on or about May 25, 1959, with an instrument which reads, in pertinent parts, as follows:

"FIRST NOTICE
TERMINATION OF LEASE
AGREEMENT

" John Parvin and other Occupants

TO House Number 158
Parrish, Alabama.

"You are hereby notified that in consequence of your default in making payments on the premises now occupied by you at the present address, towit: House Number 158 Parrish Alabama, we have elected to terminate your tenancy/or lease and you are hereby notified to quit and deliver up possession of the same to us within ten days after the date of service of this notice.

"You are in arrears with your payments for the following period of time:

| | |
|---|---:|
| 4 months house payments | 82.28 |
| 4 months insurance | 6.84 |
| 4 months water | 8.00 |
| Total | $97.12 |

Sumiton Land Company, Inc.

J. E. Simmons (signed)

"Served this 25 day of May 1959 "

If the appellant's evidence stood alone, it would be clear that under the terms of the lease-sale contract Parvin's lease had been terminated and his right to purchase had been forfeited long prior to the fire, unless there had been a waiver by the Land Company.

But Parvin's testimony must be considered in connection with that of Simmons to determine if a jury question was presented as to whether Parvin's lease had been terminated and his rights to purchase had been forfeited at the time of the fire.

On direct examination Parvin gave no testimony in regard to the number of payments he had made prior to the fire.

On cross-examination, he testified that he made a payment on the day the lease-sale contract was executed, which was on either September 10 or September 11, 1958. The uncertainty as to the date of execution results from the fact that the contract on its face shows both days as the date of execution. This discrepancy is, however, immaterial and is pointed out solely for the purpose of accuracy. On further cross-examination, Parvin was asked the following question and gave the following answer:

"Q. How many payments do you recall having made to them Mr. Parvin?

"A. I don't know. I think I made eight or ten payments. I don't know for sure. I have got receipts for about five or six."

Parvin produced only five receipts dated as follows: September 10, 1958; November 4, 1958; November 19, 1958; February 28, 1959; and March 28, 1959. He stated that these were all the receipts he had; that it had been so long he might have lost some; that the receipts he produced "may be all of them. * * * I don't recall just how many payments I did make." The receipts produced by Parvin were in accord with the records of the Land Company.

On further cross-examination, Parvin was asked the following questions and gave the following answers:

"Q. This last one [receipt] is dated March 28. Do I understand your testimony to be you had made, you think, some eight or ten payments on the property?

"A. I thought I had. I may be wrong; I don't know. Anyway that is all the receipts I have. I may have more and I may not. I couldn't say for sure without the receipts.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Were you up-to-date in your payments at the time this fire occurred?

"A. No, I wasn't.

"Q. Do you recall how far behind you were on the payments?

"A. Mr. Simmons [vice-president of appellant] said I was a hundred twenty dollars, but I wasn't that far behind. I was ninety-seven dollars behind."

Parvin admitted he was ninety-seven dollars behind when he received the "Termination of Lease Agreement" on May 25, 1959, and that he made no further payment after that date. Parvin also stated on cross-examination that he "must have been" up on his payments on March 28, 1959, when he made his last payment or "they would have charged me more payment. * * * They didn't say nothing to me about being behind on that payment. If they had I probably would have paid more."

■ In this state, unlike in some others, there need be only a scintilla of evidence to require reference of an issue of fact to the jury. If there is "a mere 'gleam,' 'glimmer,' 'spark,' 'the least particle,' the 'smallest trace'—'a scintilla' " afforded from the evidence to sustain the issue, the trial court is duty bound to submit the question to the jury. Barber v. Stephenson, 260 Ala. 151, 69 So.2d 251; Boggs v. Turner, 277 Ala. 157, 168 So.2d 1.

But we have said that where the only basis for a verdict in favor of plaintiff must rest upon speculation pure and simple, a choice merely of speculations or guesses or conjectures, the defendant is due the affirmative charge. Southern Ry. Co. v. Woodstock Mills, 230 Ala. 494, 161 So. 519; Davis v. Birmingham Electric Co., 250 Ala. 98, 33 So.2d 355; St. Louis & S. F. R. Co. v. Dorman, 205 Ala. 609, 89 So. 70; Southern R. Co. v. Miller, 226 Ala. 366, 147 So. 149; Louisville & N. R. Co. v. Rogers, 242 Ala. 448, 6 So.2d 874.

Parvin's testimony as summarized above was not, in our opinion, sufficient to authorize the jury to find that he had made more than five payments. His statement to the effect that he thought he had made eight or ten payments was not evidence that he had made such payments, nor was his statement to the effect that he must have been up with his payments when he made the payment on March 28, 1959, evidence that he was current in his payments at that time. Those statements were nothing more than speculations, guesses or conjectures.

We hold, therefore, that under the evidence presented, when considered in connection with the lease-sale contract, Parvin's rights as a lessee had been ended and his rights under the purchase provisions of the lease-sale contract had been terminated, and consequently he had no insurable interest in the property destroyed by fire unless the forfeiture had been waived by the Land Company prior to the fire. Birmingham v. Empire Insurance Company, 42 Barb. (N.Y.) 457.

We come now to a consideration of the contention of Parvin, the appellee, to the effect that there had been such a waiver.

Before we come to a consideration of the evidence as it relates to waiver, perhaps we should give consideration to the case of Spangler v. Barber, 245 Ala. 386, 17 So.2d 232, upon which appellant relies so heavily.

In Spangler v. Barber, supra, we had before us a lease-sale contract apparently identical with the contract here involved. There the lessor sought, among other things, to enforce specific performance of the contract on the part of the lessees to purchase the property. Reversing the decree appealed from, we held that the contract contemplated that it should continue a lease until the end of the term and then, if the tenant had paid all installments of rent, he had the right to treat it as a contract of purchase; but that his default *ipso facto* voided that condition without affirmative action on the part of the vendor. The property involved in that case was vacant lots. The lessee—or his assignee—defaulted in the stipulated installments some twelve years before the bill was filed. In *Spangler,* the real question was whether or not the contract, by its terms, imposed upon defendant a binding obligation to purchase and pay for the property. We held that it did not, but that his right to purchase lapsed upon his failure to comply with the conditions upon which it was granted, and that his only obligation remaining was to pay rent. That case dealt with the rights of the lessor-vendor, not with those of the lessee-vendee. There was no question of a waiver of the provision of the contract for an *"ipso facto"* forfeiture of the right to purchase. Here the question of a waiver is one of importance, strongly insisted upon by the appellee, Parvin.

That such a forfeiture may be waived by the lessor-vendor is established. Murray v. Webster, 256 Ala. 248, 54 So.2d 505; Gatewood v. Hughes, 214 Ala. 674, 108 So. 562; Stewart v. Cross, 66 Ala. 22; Hurst v. Thompson, 73 Ala. 158; Brigham & Co. v. Carlisle, 78 Ala. 243; Davis v. Robert, 89 Ala. 402, 8 So. 114. The cases just cited were in equity. But the same principle has been applied in cases on the law side. Nelson v. Sanders, 123 Ala. 615, 26 So. 518; Andrews v. Tucker, 127 Ala. 602, 29 So. 34; Lowy v. Rosengrant, 196 Ala. 337, 71 So. 439; Jordan & Co. v. Yancey & Abernathy, 242 Ala. 385, 6 So.2d 473. Statements in Humphrey v. Humphrey, 254 Ala. 395, 48 So.2d 424, 31 A.L.R. 2d 315, and in Coley v. W. P. Brown & Sons Lumber Co., 251 Ala. 235, 37 So.2d 125, to the effect that only a court of equity has jurisdiction to relieve against forfeiture were not intended to apply to a situation such as is presented in this case at law where the defendant relies upon a claim of forfeiture and the plaintiff, in effect, replies by saying that the forfeiture has been waived.

The burden of proving a waiver was upon Parvin, the person asserting it. Pen-

ney v. Burns, 226 Ala. 273, 146 So. 611; Murray v. Webster, supra; Davis v. Folmar, 203 Ala. 336, 83 So. 60.

■ By accepting a payment on March 28, 1959, the Land Company waived its right to insist upon forfeitures which under the terms of the lease-sale contract occurred prior to that time. Hurst v. Thompson, supra; Nelson v. Sanders, supra; Penney v. Burns, supra.

But the waiver of default as to installments due prior to March 28, 1959, did not operate as a waiver of the right to insist upon payment of subsequent installments as provided in the contract, or prevent the Land Company from declaring a forfeiture for failure to do so. Nelson v. Sanders, supra; Davis v. Folmar, supra.

We will now consider the evidence as it bears on Parvin's claim of waiver after the payment made on March 28, 1959.

Parvin does not contend that he made the payments due on April 1 and May 1 or June 1, 1959.

On or about May 14, 1959, Parvin received a letter from Mr. Simmons, a vice-president of the Land Company, which reads as follows:

"We received your last payment March 28, 1959. You are in the arrears 4 months in the amount of $97.12. This amount will have to be caught up to date at once. Please come by my office in the next 5 days."

As far as this record discloses, Parvin did not contact the Land Company within the five-day period and on May 25, 1959, he received from the Land Company the "Termination of Lease Agreement" which we have quoted above.

After receiving that instrument, Parvin moved a bed and some of his clothing from the insured house to a cafe which he operated in Parrish. He did not thereafter sleep in the house, although he left a bed, table, dresser, stove and some of his clothing in the house and those articles were lost in the fire.

Parvin testified that on or about June 15, 1959, he went to the office of the Land Company and tendered the sum of $25 on payment of his indebtedness, which he said was in the sum of $97.12. His tender was refused. Parvin said that he was advised by the Land Company vice-president to borrow the sum of $120 from a bank with which to pay the amount which the Land Company claimed was due. Parvin sought to borrow money from a bank, but was unable to do so without a cosigner. He had not tried to get a cosigner prior to the fire because no definite time had been fixed by the Land Company's vice-president and because he "didn't think he was pushed that bad."

■ As we have shown, Parvin was in arrears at the time he received the letter of May 14 and the "Termination of Lease Agreement" on May 25, 1959. He made no payment thereafter. His tender of June 15, 1959, was in an amount less than the amount he admitted he owed. So the tender which was refused certainly cannot be said to constitute a waiver of the forfeiture by the Land Company. Nor can it be said that a waiver resulted from the fact that the vice-president of the Land Company indicated on June 15, 1959, after a forfeiture had been declared, that the Land Company would accept payment in the future of the amount owed on the lease-sale contract. See Mooney v. Weaver, 262 Ala. 392, 79 So.2d 3.

■ We are of the opinion that under the evidence Parvin's rights as a lessee were terminated by the "Termination of Lease Agreement" served on him on May 25, 1959, although at that point the Land Company might not have been able to have forced him in an unlawful detinue action to remove from the premises, because he said he had not received a second notice; that he was in arrears in his payments much more than thirty days at the time

oł the fire; and that there was no waiver by the Land Company of the forfeiture subsequent to March 28, 1959. Hence, Parvin's insurable interest in the property had been terminated prior to the fire. See Birmingham v. Empire Insurance Company, supra.

We hold that the affirmative instructions requested by the appellant insurance company should have been given. Because of the refusal of those instructions, the judgment of the trial court must be reversed.

Reversed and remanded.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.